# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JOSEPH AMOOP** *also known as* **ANOOP MICHAEL JOSEPH**,<br><br>Petitioner,<br><br>v.<br><br>**THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY**,<br><br>Respondent. | Case No. 20–cv–15473–ESK<br><br><br>OPINION |

**KIEL, U.S.D.J.**

   **THIS MATTER** comes before the Court on petitioner Joseph Amoop's, also known as Anoop Michael Joseph, second amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Second Amended Petition). (ECF No. 20). Respondent Attorney General of New Jersey opposes the Second Amended Petition. (ECF No. 25.) For the following reasons, I will dismiss in part and deny in part the Second Amended Petition. No certificate of appealability shall issue.

   **I.   FACTS AND PROCEDURAL HISTORY**

   I adopt the facts as set forth in the opinion of the New Jersey Superior Court Appellate Division (Appellate Division) in its opinion denying petitioner's direct appeal.

> During the early morning hours of November 6, 2006, defendant and his co-defendant, Desmond McMoore, drove from Philadelphia to Camden to purchase narcotics. Amoop, apparently unhappy with the narcotics he received, engaged in a disagreement with S.H., the man selling the narcotics. S.H. told defendant to go to the back of the line. During the dispute, defendant pulled out a gun, shot S.H. numerous times,

and rifled through his pockets. Two other men in line began to run away, but McMoore pointed his gun at them to prevent them from calling police. McMoore and defendant robbed the two men before fleeing to Philadelphia.

After being arrested in Philadelphia on unrelated charges on July 6, 2007, McMoore volunteered information about S.H.'s murder, which led to defendant's criminal charges in this matter. Defendant was arrested in Pennsylvania on July 17, 2007 on charges unrelated to this appeal. On July 19, 2007, the Camden County Prosecutor's Office sought defendant's extradition to New Jersey so that defendant could face trial on criminal charges relating to S.H.'s death. The Prosecutor's Office drafted a Governor's Warrant, which was sent to Pennsylvania's extradition coordinator on August 17, 2007 and forwarded to the Philadelphia District Attorney's Office on August 23, 2007. Defendant was later indicted in New Jersey on June 11, 2008 for first-degree murder, contrary to N.J.S.A. 2C:11–3a(1) or (2) (Count One); first-degree felony murder, contrary to N.J.S.A. 2C:11–3a(3) (Count Two); first-degree robbery, contrary to N.J.S.A. 2C:15–1 (Count Three); first-degree conspiracy to commit murder or robbery, contrary to N.J.S.A. 2C:5–2 (Count Four); second-degree possession of a firearm for an unlawful purpose, contrary to N.J.S.A. 2C:39–4a (Count Five); third-degree unlawful possession of a handgun, contrary to N.J.S.A . 2C:39–5b (Count Six); and fourth-degree aggravated assault, contrary to N.J.S.A. 2C:12–1.2 (Count Seven).

On August 26, 2010 (approximately three years later), the Prosecutor's Office recalled the Governor's Warrant and attempted to lodge a detainer against defendant. On August 27, 2010, the Prosecutor's Office sent defendant a request asking him to submit to the detainer procedures outlined in the Interstate Agreement on Detainers [(Detainer Act)]. Defendant refused to sign the agreement. The Prosecutor's Office subsequently initiated an attempt to complete extradition pursuant to

> the [Detainer Act] without defendant's consent on September 30, 2010. Despite sending a letter to Pennsylvania authorities, those authorities took no further action on the Prosecutor's Office's request.
>
> On October 14, 2010, the Prosecutor's Office sought to proceed under the original Governor's Warrant, with addenda providing for defendant's return to New Jersey. The Prosecutor's office drafted a new Governor's Warrant on October 25, 2010 pursuant to the indictment lodged against defendant after the original Governor's Warrant was drafted. This new Governor's Warrant was sent via overnight mail to the Pennsylvania Governor's extradition coordinator on October 27, 2010. The Governor's Warrant was signed on October 3, 2011, after defendant was sentenced on the outstanding Pennsylvania criminal charges. After conducting a hearing on defendant's petition for habeas corpus, a Pennsylvania judge issued an order of rendition on November 23, 2011, permitting defendant's return to New Jersey. Defendant was then extradited to New Jersey on December 17, 2011. Defendant was arraigned three days later.
>
> Defendant asserted pretrial that his prosecution was barred by the [Detainer Act]. The trial judge heard and denied defendant's motion to dismiss the indictment. The jury trial began on October 7, 2013, and finished on October 18, 2013. The jury acquitted defendant of Count One, and convicted defendant of Counts Two, Three, Four, Five and Six.

*State v. Amoop*, No. A–3837–13T1, 2016 WL 3619725, at *1–2 (N.J. Super. Ct. App. Div. July 7, 2016) (*Amoop I*) (footnotes omitted). The trial court dismissed Count Seven. *Id.* at *2 n. 3. "On Count Two, the court sentenced defendant to life in prison subject to an eighty-five percent parole disqualification pursuant to the No Early Release Act, N.J.S.A. 2C:43–7.2, and five years' imprisonment for Count Six, all consecutive to his sentences in

3

Pennsylvania. The court merged Counts Three, Four, and Five with Count Two." *Id.* at *2.

Petitioner filed an appeal with the Appellate Division arguing that the indictment should have been dismissed as New Jersey triggered the Detainer Act but failed to bring him to trial within the Detainer Act's 120-day time frame. *Id.* He also argued that his sentence was excessive. *Id.* The Appellate Division affirmed petitioner's convictions and sentence on July 7, 2016. *Id.* at *4. The New Jersey Supreme Court denied certification on October 21, 2016. *State v. Amoop*, 228 N.J. 64 (2016).

Petitioner filed a *pro se* petition for post-conviction relief (PCR) on July 14, 2017. (ECF No. 25–24). The PCR court appointed counsel, who submitted an amended brief and appendix. (ECF No. 25–26). In addition to several ineffective assistance of trial counsel claims, petitioner argued there was newly discovered evidence "in the form of testimony from one Jose Lopez which states that Desmond McMoore told [Lopez] that he committed the murder … ." (ECF No. 25–24 p. 6.) This "Affidavit of truth," dated November 20, 2013, read:

> On November 18th 2013 after a long day at court I was in the day room of 4 North upper E block. I was eating and I offered "Dez" Desmond McMoore some. We started up a conversation, small talk like we usually do about family, court, etc. Anyhow I told him what I was locked up for. So he told Me to stop stressing, that's a small thing. So I asked him what was he locked up for, he told Me 3 murders. I told him I didn't believe him, so he went to his room and got a newspaper article from the Courier Post, it might of been from October 26th 2013, it stated "Killer Found guilty of third Murder." As I read it it said "Dez" testified against Joseph Amoop for the killing of Sherill Harris and he got 25 years as a deal, it also stated Joseph Amoop is serving two life sentences in Philly. I said to "Dez" that's crazy that Amoop got you caught up in all this, he said to Me it's the other way around while smiling. I said what do you mean, he said "that's all my

4

> work" Meaning that he committed that murders "Dez" I just gave Mike all the credit. I asked him did he have life over Philly too, he said Hell No. He's too smart for that he said. I asked him what happened over here in Camden and what he was doing over here? "Dez" said he was drop[p]ing his cousin Wood off and they decided (Dez and Wood) to rob somebody, he said the victim took too long to give the shit up so he shot his dumb ass! Mike didn't know what was going on he was drunk, he was trying to buy some coke, he didn't even know the guy died! So I asked him what happened over Philly, he told me him and Mike "Joseph Amoop" was at a bar when they left they met some people that had an accident, he wanted to help. Mike said take him home "Dez" said its only gonna be a minute, but his plan the whole time was to rob them. [H]e said when he pulled up on them, he asked if they was alright they said yeah that's when he pulled out his gun and Mike jumped out the car and ran and left him. [T]hat's when he robbed the victim and shot him he said after that he was on his way home and this Spanish guy was all in his face while he was at a light, so he shot him too. I said to him how did Mike "Joseph Amoop" get found guilty of those bodies? He said the prosecutors believe anything he said, I told them Mike shot the Spanish guy out the sunroof of his car and they believe me and he wasn't even there. [H]is bitch ass already ran and left me!
>
> This is an Affidavit of Truth and nothing but the truth so help Me God!

(ECF No. 25–24 pp. 7, 8) (Lopez Affidavit). The PCR court denied the petition without addressing the newly discovered evidence claim. (ECF No. 25–66 p. 13.) Petitioner appealed, and the Appellate Division issued a limited remand directing the PCR court to consider the newly discovered evidence claim. (ECF No. 20–2 p. 44.)

The PCR court conducted oral argument on July 10, 2020. (ECF No. 25–67.) PCR counsel argued that trial counsel had been ineffective for failing

to investigate the Lopez Affidavit and make a motion for a new trial. (*Id.* p. 4.) PCR counsel stated that he had attempted to contact Lopez and McMoore but they refused to cooperate. (*Id.*) The PCR court rejected the claim, finding that the Lopez Affidavit was not sufficiently authenticated, failed to comply with the New Jersey Court Rules, and had no one to attest to its veracity. (*Id.* pp. 11, 12, 13.) It further noted that petitioner did not present any evidence "that trial counsel was aware of or is currently aware of this document. There is no certification submitted from trial counsel indicating that he was aware of this document before defendant was sentenced." (*Id.* p. 13.)

Petitioner returned to the Appellate Division. The court rejected petitioner's appeal on June 30, 2021. *State v. Amoop*, No. A–00737–18, 2021 WL 2711113, at *3 (N.J. Super. Ct. App. Div. June 30, 2021) (*Amoop II*). The New Jersey Supreme Court denied certification on October 8, 2021. *State v. Amoop*, 248 N.J. 489 (2021).

## II. LEGAL STANDARD

"The federal habeas statute, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases." *Shoop v. Hill*, 586 U.S. 45, 48 (2019). A federal court may entertain a petition for writ of habeas corpus on behalf of a person in state custody pursuant to the judgment of a state court "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

>established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). "[A] state-court decision is an unreasonable application of [the Supreme Court's] clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." *White v. Woodall*, 572 U.S. 415, 426 (2014). "This means that a state court's ruling must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Shoop*, 586 U.S. at 48 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). I must presume that the state court's factual findings are correct unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Even if a petitioner meets AEDPA's "difficult" standard, he must still show that any constitutional error had a "substantial and injurious effect or influence" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). *See Brown v. Davenport*, 596 U.S. 118, 134 (2022) ("[E]ven a petitioner who prevails under AEDPA must still today persuade a federal habeas court that 'law and justice require' relief.").

### III. DISCUSSION

Petitioner presents 5 claims for me to review:

- The New Jersey Appellate Division's determination that PCR counsel was not ineffective in failing to investigate the 'Lopez Affidavit' was an unreasonable application of clearly established federal law and the decision involved an unreasonable determination of the facts (Ground A).

- Instructions to the jury on the charge of conspiracy violated petitioner's constitutional right to a unanimous verdict; trial counsel was ineffective for failing to object to unconstitutional jury instructions, and post-conviction counsel was ineffective for failing to raise same (Ground B).

- The trial prosecutor's serial improper comments during closing argument constituted a violation of due process of law; trial counsel was ineffective for failing to object; and post-conviction counsel was ineffective for failing to raise same (Ground C).

- The delay in bringing petitioner's case to trial violated the Sixth Amendment's speedy trial provision and the Interstate Agreement on Detainers Act; the state court's holding finding otherwise was contrary to clearly established Supreme Court precedent (Ground D).

- Trial counsel's cumulative errors undermine confidence in Mr. Amoop's convictions (Ground E).

A. **Procedural Default**

Respondent asserts that Grounds B, C, and E must be dismissed as they are procedurally defaulted. (ECF No. 25 p. 29) Petitioner concedes that Grounds B and C are procedurally defaulted because he did not exhaust these claims in the state courts and cannot do so now. (ECF No. 20–1 pp.15, 16.) However, he asserts Ground E does not require exhaustion. (*Id.* p. 15.)

First, I reject petitioner's argument that he was not required to exhaust his claim of trial counsel's cumulative error.  "[A] cumulative error argument constitutes a standalone constitutional claim subject to exhaustion and procedural default … ."  *Collins v. Sec'y of Pennsylvania Dep't of Corr.*, 742 F.3d 528, 541 (3d Cir. 2014).  Petitioner did not exhaust this claim, so it is also subject to procedural default.

"[P]rocedural default protects against 'the significant harm to the States that results from the failure of federal courts to respect' state procedural rules."  *Shinn v. Ramirez*, 596 U.S. 366, 378–79 (2022) (quoting *Coleman v. Thompson*, 501 U.S. 722, 730 (1991)).  "'Out of respect for finality, comity, and the orderly administration of justice,' federal courts may excuse procedural default only if a prisoner 'can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law.'"  *Id.* at 379 (quoting *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Coleman*, 501 U.S. at 750).  "To establish cause, the prisoner must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'"  *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

To establish prejudice, "[t]he habeas petitioner must show 'not merely that the errors at … trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"  *Murray*, 477 U.S. at 494 (emphasis and omission in original) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).  Alternatively, petitioner can excuse his default by "demonstrat[ing] that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  I am limited to the state court record in making its determination.  *Shinn*, 596 U.S. at 375–76 ("[O]nly rarely may a federal habeas court hear a claim or consider evidence that a prisoner

9

did not previously present to the state courts in compliance with state procedural rules.").

Petitioner acknowledged the procedural default in the Second Amended Petition but reserved addressing cause and prejudice for a reply brief. (ECF No. 20–1 p. 16.) He further briefly addressed the miscarriage of justice exception, stating "[s]uch a miscarriage of justice trumps any [procedural] bar … ." (*Id.*) Petitioner did not submit a reply brief after respondent submitted the answer, however, leaving the cause and prejudice and miscarriage of justice arguments unaddressed. "[A]rguments raised in passing … but not squarely argued, are considered waived." *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n. 6 (3d Cir. 1997). As petitioner has not established either cause and prejudice to excuse the default or a fundamental miscarriage of justice, I cannot consider the merits of Grounds B, C, and E. *See McCandless v. Vaughn,* 172 F.3d 255, 263 (3d Cir. 1999) (noting court was not free to consider merits of procedurally defaulted arguments when petitioner did not argue cause and prejudice or miscarriage of justice exceptions). Therefore, I will dismiss Grounds B, C, and E as procedurally defaulted.

### B. **Ineffective Assistance of Counsel**

In Ground A, petitioner argues that trial counsel was ineffective for failing to investigate the Lopez Affidavit. (ECF No. 20–1 p. 19.)[1] To succeed on his ineffective assistance claim, petitioner must first "show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington,* 466 U.S. 668, 688 (1984). He must then show "a reasonable probability that, but for counsel's unprofessional errors, the result of the

---

[1] Petitioner also refers to the ineffective assistance of PCR counsel, but "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i).

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The "pivotal question" in a § 2254 *Strickland* claim "is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). My review is thus "doubly deferential[.]" *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

Petitioner argued during his PCR proceeding that trial counsel did not investigate the Lopez Affidavit and file a motion for a new trial. The Appellate Division denied this claim on the merits, concluding that petitioner "did not show that his counsel was ineffective under prong one of the *Strickland* standard because he has not supported the veracity of the Lopez document and has merely made vague, conclusory, and speculative allegations." *Amoop II*, 2021 WL 2711113, at *3. This is a reasonable application of *Strickland* based on the state court record.

Petitioner contends that "[d]efense counsel obtained, shortly after the conclusion of trial, an affidavit from an individual named Jose Lopez," (ECF No. 20 p. 8), but there is no evidence to support this assertion. Petitioner did not submit a sworn statement from trial counsel stating that he knew about the Lopez Affidavit, nor did petitioner submit his own sworn statement asserting that he gave the Lopez Affidavit to trial counsel. (ECF No. 25–67 p. 13 (finding by PCR court that petitioner "makes a bald statement unsupported by any affidavit or certification that counsel was aware of [the Lopez Affidavit) prior to" sentencing).) This "non-specific claim of providing sufficient information to

his attorney earlier is thus 'inadequate on its face' and inconsistent with the record … ." *Cordero v. United States*, 253 F. Supp. 2d 173, 176 (D.P.R. 2003) (denying relief where there was no evidence that the defendant had ever given counsel any information concerning an alibi defense). Therefore, petitioner's claim fails even if I assume the contents of the Lopez Affidavit are true because he has not shown that trial counsel knew about it but failed to investigate it. Petitioner has the burden of proof under §2254, *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011), and he "cannot meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations … ." *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir. 1991); *see also Villanueva v. Rozum*, No. 06–cv–05564, 2008 WL 268060, at *12 (E.D. Pa. Jan. 28, 2008) ("It is certainly reasonable to conclude that an ineffective assistance claim lacks merit when it lacks factual support.") Accordingly, the Appellate Division court did not apply the first prong of *Strickland* in an objectively unreasonable manner. Petitioner is not entitled to habeas relief on this basis.

C.  **Interstate Agreement on Detainers**

In Ground D, petitioner asserts that the indictment should have been dismissed as New Jersey violated the Detainer Act. The Appellate Division rejected this argument on direct appeal. *Amoop I*, 2016 WL 3619725, at *1–2. Therefore, I may only grant habeas relief if the Appellate Division's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). I find that petitioner has not met this standard.

The Detainer Act "'is a compact which has been adopted by 48 states, the District of Columbia, and the United States, to encourage expeditious and orderly disposition of outstanding criminal charges filed against a person

incarcerated in a different jurisdiction.' [Detainer Act] violations are cognizable in federal habeas corpus because the [Detainer Act] is a 'law of the United States' for purposes of 28 U.S.C. § 2254." *McCandless v. Vaughn*, 172 F.3d 255, 263 (3d Cir. 1999) (quoting *Cooney v. Fulcomer*, 886 F.2d 41, 43 (3d Cir. 1989)); *see also Reed v. Farley*, 512 U.S. 339, 347 (1994) ("While the [Detainer Act] is indeed state law, it is a law of the United States as well.") This ability to grant habeas relief is limited, however; a Detainer Act violation is a basis for federal habeas corpus relief only when the "error qualifies as 'a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure.'" *Reed*, 512 U.S. at 348 (alteration in original) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

Here, the relevant provisions are Detainer Act Article IV and Article V, enacted in New Jersey as N.J.S.A. 2A:159A–4 and N.J.S.A. 2A:159A–5, respectively. Article IV sets forth the process by which a prosecutor may file a detainer against a defendant incarcerated in another state to compel his presence at trial:

> The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party State made available … upon presentation of a written request for temporary custody or availability to the appropriate authorities of the State in which the prisoner is incarcerated … .

N.J.S.A. 2A:159A–4(a). Once a defendant has arrived in the receiving state, trial must commence within 120 days, subject to reasonable and necessary continuances based on a showing of good cause. N.J.S.A. 2A:159A–4(c). If not, Article V(c) requires the trial court to dismiss the indictment with prejudice. N.J.S.A. 2A:159A–5(c).

13

The Appellate Division concluded that the Detainer Act did not apply because petitioner's "extradition was conducted pursuant to a Governor's Warrant issued under the Uniform Criminal Extradition Act (UCEA), N.J.S.A. 2A:160–9 et seq., not pursuant to the [Detainer Act]." *Amoop I*, 2016 WL 3619725, at *3. Petitioner points to no Supreme Court case that holds a state cannot rescind its Detainer Act request and bring a defendant to trial under a different statute, meaning the decision was not contrary to established Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).

Petitioner also has not established that the Appellate Division's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The order of rendition signed by the Pennsylvania court authorized petitioner's extradition to New Jersey "pursuant to the agreement between the governor of the State of New Jersey and the governor of the Commonwealth of Pennsylvania." (ECF No. 25–5 p. 37.) The Appellate Division reasonably concluded from the order that the Detainer Act did not apply.

Assuming *arguendo* that the Detainer Act governs here, petitioner's claim does not warrant habeas relief. A plurality of the Supreme Court noted that "Article V(c) instructs only that 'the appropriate court of the jurisdiction where the indictment ... has been pending'—*i.e.*, the original trial court—shall dismiss the charges if trial does not commence within the time Article IV(c) prescribes." *Reed v. Farley*, 512 U.S. 339, 352 (1994) (omission in original). "Article V(c) does not address the discrete question whether relief for violations of the [Detainer Act's] speedy trial provisions is available on collateral review." *Id.* "[A] state court's failure to observe the 120-day rule of [Detainer Act] Article IV(c) is not cognizable under § 2254 when the defendant registered no objection to the trial date at the time it was set, and suffered no prejudice

14

attributable to the delayed commencement." *Id.*; *see also Cooney v. Fulcomer*, 886 F.2d 41, 45–46 (3d Cir. 1989) ("[T]he 120-day limitation of Article IV(c), while it does contain a remedy of dismissal, is not so fundamental as to warrant an automatic grant of habeas relief without a showing of prejudice.")

Petitioner has not shown that he made a timely speedy trial request. Petitioner refused to agree to extradition via the Detainer Act in 2010 and challenged his extradition on the Governor's Warrant in 2011. To be clear, petitioner had the right to make these challenges, but they cut against his claim that he wanted a quick resolution to the New Jersey charges. *See Hakeem v. Beyer*, 990 F.2d 750, 764 (3d Cir. 1993) ("Repeated assertions of the [speedy trial] right do not, however, balance this factor in favor of a petitioner when other actions indicate that he is unwilling or unready to go to trial.")

Petitioner also did not make a speedy trial request upon his arrival in New Jersey. He arrived in New Jersey on December 17, 2011 and was arraigned on December 20, 2011. (ECF No. 25–55 p. 21.) Another conference took place on February 21, 2012, at which time counsel requested that a status conference be scheduled. (*Id.*) The status conference took place on March 19, 2012, and a scheduling order was completed setting a pretrial conference for April 30, 2012. (*Id.*) This April 30 pretrial conference appears to be the first time petitioner informed the trial court that the Detainer Act may apply. (*Id.*)[2] A formal speedy trial motion was not filed until July 27, 2012. (*Id.*; ECF No. 25–4.) Therefore, it appears from the record that petitioner invoked the Detainer Act's limitation for the first time two weeks after the 120-day deadline, again assuming it applied, passed on April 16, 2012.

---

[2] The trial court also observed that "on [April 30, 2012], defense counsel indicated he was ready to proceed with the trial date." (ECF No. 25–55 p. 22.)

15

The Supreme Court noted in *Reed* that "[w]hen a defendant obscures Article IV(c)'s time prescription and avoids clear objection until the clock has run, cause for collateral review scarcely exists." 512 U.S. at 349. Petitioner's failure to show that he invoked the deadline before it expired and when the state could have taken steps to comply with the 120-day deadline cuts against his claim that the delay resulted in a complete miscarriage of justice. *See id.* at 354 ("We see no reason to afford habeas review to a state prisoner like Reed, who let a time clock run without alerting the trial court … ."); *Barker v. Wingo*, 407 U.S. 514, 532 (1972) ("We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.")

In addition to failing to show that he timely requested a speedy trial, petitioner has failed to show that he was prejudiced by the delay. In speedy trial cases, prejudice to a defendant "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532. These include the prevention of oppressive pretrial incarceration, the minimization of anxiety and concern to the accused, and the limitation of the possibility that the defense will be impaired. *Id.* Petitioner's argument that he was prejudiced because the delay in his trial allowed McMoore to be able to testify fits within the third consideration. (ECF No. 20–1 p. 36.) This is not persuasive.

The Supreme Court has included the need to secure the testimony of witnesses among the "inevitable and wholly justifiable" reasons for a pretrial delay. *Doggett v. United States*, 505 U.S. 647, 656 (1992). Citing *Barker*, the trial court found the State's need to obtain McMoore for trial to be good cause for continuing petitioner's trial. (ECF No. 25–55 pp. 31, 32.) Petitioner does not argue that he lost access to exculpatory evidence or witnesses due to the delay, or that trial counsel was unable to effectively prepare for trial. (ECF No. 20–1 p. 36.); *see also Cross v. Cunningham*, 87 F.3d 586, 588 (1st Cir. 1996)

(rejecting Detainer Act claim on habeas review when petitioner made "no claim that the alleged [Detainer Act] violation actually impaired his ability to prepare a defense … .")  He does not provide any case law supporting that a delay caused solely by the need to secure a witness for trial prejudices a defendant to the degree that the indictment must be dismissed.  (ECF No. 20–1 p. 36.)

In summary, I find that the Appellate Division's decision is not contrary to, or an unreasonable application of, clearly established federal law.

### IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Because petitioner's habeas claims are all without merit for the reasons set forth above, he has failed to make a substantial showing of a denial of a constitutional right, and his petition is not adequate to receive encouragement to proceed further.  I will deny petitioner a certificate of appealability.

### V. CONCLUSION

For the reasons stated above, I will dismiss in part and deny in part the Second Amended Petition.  An appropriate Order accompanies this Opinion.

      */s/ Edward S. Kiel*
      **EDWARD S. KIEL**
      UNITED STATES DISTRICT JUDGE

Dated: March 19, 2025